(Hamilton County Court of Common Pleas.)

## JACOB RICHTER v. THE MAIN STREET BUILDING & LOAN COMPANY.

*Assessments against mortgage and deposit members of an insolvent building association under the Act of 1886, known as the Moore Law, and the amended Act of 1886, known as the Kuehnert Law, and the amendment of 1889, known as the Corcoran Act.*

Every member of a building association is liable to contribute by assessment in the same proportion in which he would be entitled to share in any profits; and when, under the present law, the association limits by its constitution the mortgage members from sharing in any profits except the dues paid in to the credit of capital during each current year, so also, is their liability to contribute to the losses and expenses of the association limited thereto.

January, 1897.

---

BUCHWALTER, J.

The defendant association was heretofore found to be insolvent, and has been in process of winding up under a receiver. An inventory of assets and liabilities has been filed. Some of the mortgages have been settled, a number yet remain unpaid, and controversy has arisen upon the motion of one of the mortgagors for an order on the receiver to cancel his mortgage upon payment of the balance of borrowed capital, advanced on his shares. The receiver claims the right to ask an order of assessment upon the mortgage members to cover losses of seventy per cent upon all the money paid by members, depositors and borrowers alike—as dues.

We must at all times, bear in mind that mutuality is the essential principle in a building association. When that fails, its right to exist as such fails.

We in Ohio have organized and operated our building and loan associations upon such a variety of plans or systems that it is sometimes difficult to avoid error and injustice in attempting to determine rights and duties of members growing out of their mutual contracts by any uniform rule The original plan of such associations was that which embodied the theory that all shares and the payment of dues thereon began at one time, and all rights were determined at one time by a dissolution of the association, with a pro rata distribution of the assets. When solvent, it would dissolve when the dues paid and the net earnings or profits equalled the face of the shares. If it became inolvent, then the assets levied would be just and equal, if made at a fixed rate per share, the same as in any ordinary capitalized organization.

But if the association was upon the permanent plan, whereby shares were issued at any time, and stipulated dues began thereon, and were to continue until the dues paid as capital and the net earnings equalled the face of those shares the association however continuing; then it is manifest that the membership rights and duties would vary among the stockholders according to the life and value of the share. If one member had a share of the value of $400, it is manifest that his pro rata profits and losses would not be the same as another who had a share of the value of $100. In an association operating on such a plan, it would be unequal and unjust either to divide the profits, or, if insolvent, to assess the losses per share.

COPYRIGHT, 1897, BY CARL G. JAHN.

Under the act of April 15, 1880, amending section 3835, Revised Satutes, (the so-called Moore Act,) the borrowing or mortgage member was entitled to equally share with the deposit member in the dividends; that is, the dividends were credited ratably to all members upon the dues paid in as capital.

It is clear that if a permanent association (with terminable shares of stock), becomes insolvent, and an assessment is necessary to pay losses and make equal distribution among the members, that to be equitable such assessment should be made upon all the said dues paid in as capital, which, under other conditions, would have shared ratably and equally in the profits  Thus, if a mortgage and borrowing member had paid·on his shares dues as capital, $400 (to the credit of a loan for a larger sum,) and a deposit member had paid the same amount of $400, then the assessment would be for an equal amonut.   But said act was amended May, 1886, by supplementary sections (known as the Kuehnert Act), and by the act of March, 1889, so that 3835a empowered such building associations to provide by their constitution and by laws in what manner, proportion and time such earnings should be credited or paid the members; "also, in case of a loss, all losses shall be asssesed in the same proportion and manner on all members after the reserve fund shall have been applied to the payment of such losses."

Under the law, this association, being so empowered, provided by its constitution that "members who have borrowed money on mortgage security shall be entitled only to dividends on the amount of dues paid during each current year, and shall receive no further dividends on the amount of repaid capital for which a previous annual settlement has been made."

Applying our new principle of mutuality, of equality, and especially as provided in its statutory amendment of March, 1889, directing that losses shall be assessed in the same manner and proportion on all the members (as any dividends would have been declared), and our duty seems quite clear. The assessments authorized by the law and the constitution (as stipulated in the mortgages), is to be at the same rate of per cent. on all the capital paid by the deposit members upon which they would have been entitled to receive dividends earned, and on all of 'the dues paid during the current year" by mortgage members; that is, on all dues paid as capital since the annual settlement and rebate of interest, and not on "the amount of repaid capital for which a previous annual settlement has been made."

We speak of shares of stock in a building association, and the law provides for the same; but, in principle, one's share of stock under our present statute, and the usual constitutions represent a mere limited division of one's pass book, credits and mutual rights thereon.   To find out a member's interest, we count the dues he has paid, and ascertain his share of the earnings or losses thereon.

As the law was at the time of the decision in the case of Siebel v. Building Association, 43 Ohio St., 371, it was logical to keep the debit items separate from the credit items until the final settlement of the share when the dues as capital paid and the earnings credited equalled the face of the share.

But under the law as it now is, authorizing contracts with the mortgage member, by which he is limited in his share of the earnings to the dividends estimated upon the current year, the only logical solution of his membership relation is, that his loan is canceled pro tanto by his annual credits, his interest rebated so that he pays only for the use of the money he owes, and he receives no dividends "on the amount of repaid capital for which a previous annual settlement has been made"

·This is the only rule of assessment by which I can arrive at that equality and mutuality of the rights of the members of associations

organized on the plan of this defendant. This mutual obligation and right is recognized generally in Eversman, Receiver v. Schmidt, 53 Ohio St., 174, but the finding of facts in the record does not raise the issue presented in the case at bar.

It has not been the subject of argument, but I am advised that the state of the account with the deposit members who have withdrawn part of their capital, requires adjudication. It would seem, however, that the same principle applied to the rights and liabilities of the deposit members who have withdrawn a part of their paid-in dues would limit the assessment to the remainder of capital to their credit in the same manner in which they would be limited to share in dividends.

The assessment is to be made as above directed, with this proviso. The total estimate of the receiver's and attorney's fees shall not exceed $1,000 in any event during the entire proceedings and trust. When an equitable assessment has been made, as I deem it now ordered, it is to be presumed that the mortgage members will pay off their mortgage debt without further litigation.

M. F. Galvin, for the receiver.

W. M. Eames, for the mortgagor.